Argued October 15, affirmed November 25, 1959

IN THE MATTER OF THE ESTATE OF
THOMAS FARRELL, DECEASED
PLUCHOS ET AL *v.* BOEHLE
346 P. 2d 634

*Nathan Weinstein*, Portland, argued the cause and filed briefs for appellant.

*Irving Rand* and *Robert Clapperton*, Portland, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Warner, Perry and King, Justices.

WARNER, J.

This is an appeal from a decree declaring null and void two documents, each purporting to be the last will and testament of Thomas Farrell, deceased. One was executed on July 9, 1954, the other on July 14, 1954. In both two specific legacies are made which aggregate $7,500 in the first and $5,000 in the second, with provisions making Mary Ann Boehle, the defendant-appellant, and a nonrelative of the decedent, the sole residuary legatee of an estate in real and personal property having an approximate value of $90,000.

Thomas Farrell, a long-time resident of Portland, Oregon, died in that city on November 6, 1955, being then 84 years of age. He was unmarried, left no lineal descendants and was survived by two nieces and seven nephews.

The trial court also found that the decedent left a will bearing date of January 15, 1953, with a codicil thereto dated January 27, 1953, and that these instruments constitute in fact the last will and testament of the late Thomas Farrell. No provision is made for the appellant in the will of January, 1953. It leaves the bulk of his estate to certain Catholic institutions and charities.

In declaring the purported wills of 1954 to be nullities, the trial court gave as reasons therefor that at the time of their execution, the decedent was of unsound mind and body and not able to dispose of his property or direct the manner of its descent and, as a further reason, that as of the date of the wills relied upon by the appellant, Thomas Farrell was responding to the undue influence, fraud, duress and coercion practiced upon him by Mary Ann Boehle.

No involved nor novel questions of law are presented. The controlling rules applicable are so well established that an extended restatement of them is unnecessary. Our examination of the voluminous record leads us irresistibly to the conclusion that the instruments of July 9 and 14, 1954, were the product of a brazen course of undue influence on the part of the appellant, exercised under circumstances patently evident in their purpose and design. Appellant's methods and mercenary motives are so indefensible that they merit no expanded statement in justification of our conclusions.

We are equally impressed by abundant evidence, both lay and medical, that Mr. Farrell, 84 years old when he first met Mrs. Boehle in March, 1953 (a woman 32 years old at the time of the trial), was then so physically and mentally infirm he was not able to make a valid testamentary disposition of his property and was a ready victim for the blandishments and "affectionate" attentions which she daily bestowed upon him from that time until he signed the instruments of July, 1954, the last one 12 days before being committed to the Oregon State Hospital.

■ In this venal enterprise both wills were drawn by attorneys of Mrs. Boehle's choosing. When a will is drawn by an attorney for the beneficiary who enjoys a confidential relationship with the testator, a presump-

tion of undue influence arises. *In re Lobb's Will*, 177 Or 162, 188, 160 P2d 295; *In re Estate of Manillus Day*, 198 Or 518, 532, 257 P2d 609; *Clauder v. Morser*, 204 Or 378, 389, 282 P2d 352. The evidence adduced by the appellant did not overcome this presumption.

The attorney who drew the first will, deceased at time of trial, was long known to her both professionally and socially. There is sufficient testimony, if true, which would warrant describing that attorney's part as conspiratorial in view of his expected participation in one-half of what Mrs. Boehle hoped to obtain as the sole residuary legatee thereunder.

■ The young attorney engaged by Mrs. Boehle to draw the second will had also known her for sometime. We doubt, however, that he was knowingly a party to her fraud. He had never met the decedent before and having been selected to serve by one who was in a confidential relationship with the testator and his principal beneficiary, the second attorney failed to meet the professional standards and responsibility to the testator that those known circumstances entailed. See *In re Estate of Manillus Day*, supra (198 Or at 535). His failure in this respect was probably due in part to the fact that he had been admitted to practice only a few months before and, as he stated, he had had very little experience in drawing wills. We note his fee of $10 was paid by a Boehle check, later destroyed after payment.

■ Some measure of Mrs. Boehle's character and her determination to accomplish her end at all cost is made manifest by the testimony of one of three former spouses, conversant with the employment of the attorneys above referred to and the conversations had with them by Mrs. Boehle. His testimony was that immediately prior to the trial, the appellant called him and asked him to testify in her favor, saying that

if she got what she wanted she would pay off a mortgage debt of the witness amounting to approximately $8,000. When he refused to so perjure himself she added by way of encouragement: "Everybody else is lying; why don't you?" These representations were never denied by Mrs. Boehle during the course of the trial.

In the span of nine years, beginning with Mr. Farrell's first known will of January, 1944, up to and including the will of January 15, 1953 (declared by the court to be the decedent's last will and testament), he had executed five wills. All followed substantially the same pattern; that is, with a few specific legacies of money to relatives of not to exceed $1,000 each and aggregating at the most $3,000 and the gift of a lot in Laurelhurst to one Katherine Niedenthal, now deceased, and in the latter two wills of that period provisions for the cancellation of a $5,500 mortgage of a Mr. and Mrs. Pluchos. All directed that the very substantial residue of his estate be divided between eight Catholic charities or institutions. In no will made by the decedent prior to July, 1954, was appellant's name mentioned. His acquaintance with Mrs. Boehle, who leased and operated a tavern on his property, located immediately under the rooms he occupied as his residential quarters, was a mere matter of 17 months, beginning in March, 1953, and terminating with his commitment a few days after signing the will of July 14, 1954.

The provisions made in the wills of July, 1954, when compared with the consistent testamentary pattern of Mr. Farrell's bounty found in his earlier wills, discloses such a striking departure that it becomes a most significant factor which gives additional justification for our determination of the undue influence exercised by the appellant. *In re Estate of Elise Rosenberg,* 196

Or 219, 230, 246 P2d 858; *Newman v. Stover*, 187 Or 641, 653, 213 P2d 137.

So clear and convincing is the record of Mr. Farrell's mental incapacity and Mrs. Boehle's evil machinations for personal enrichment as Mr. Farrell's beneficiary that we confess great surprise that she had the temerity to seek in a court of law the gloss of legal regularity and approval for her shocking course of conduct.

Affirmed.